***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 9 January 2002 as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. The date plaintiff first went out of work as a result of the alleged occupational disease was 10 April 2000, and at the time, plaintiff's average weekly wage as reported on the Form 22 was $493.58, resulting in a compensation rate of $329.05 per week.
3. At the time plaintiff went out of work, the parties were subject to and bound the provisions of the North Carolina Workers' Compensation Act, and there was an employer/employee relationship between the parties with defendant being self- insured and administered by Gallagher Bassett, Inc.
 ***********
Based upon the greater weight of the competent and credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACTS
1. Plaintiff began her employment with Morganite, Inc. on 23 March 1992, and continued working with the company until 10 April 2000. Plaintiff worked as a BTR Inspector for Morganite inspecting and testing carbon brushes.
2. As a brush inspector, plaintiff used a band saw, grinder, micrometer, caliper, comparator and pull tester. Plaintiff was required to obtain samples of the carbon brushes and perform approximately seven tests on them utilizing various machines in the lab. Plaintiff was required to lift up to 15 pounds approximately 20 times a day, with lifting up to one pound continuously throughout the day, and 50 to 75 pounds approximately 3 to 6 times per week.
3. On 10 April 1998, plaintiff reported an injury to the plant nurse, Ms. Julia Byrd. Plaintiff reported that she experienced pain in her right index finger, middle finger and thumb. Plaintiff stated to Ms. Byrd that the pain began on Saturday while she was attempting to open a sliding glass door. Plaintiff was referred to Dr. Pamela Whitney, a neurologist, for nerve conduction studies. Dr. Whitney testified in her deposition that the nerve conduction study showed mild carpel tunnel syndrome. Based solely upon plaintiff's description of her job duties, Dr. Whitney opined that it "seems reasonable" that plaintiff's carpal tunnel syndrome was caused by her job. Dr Whitney also referred plaintiff to a rheumotologist to examine plaintiff for possible RSD.
4. On 27 July 2000, neurosurgeon, Dr. Robert L. Allen, performed a carpel tunnel release on plaintiff's right hand. Plaintiff returned to work in October 2000 with restrictions of no heavy lifting.
5. Plaintiff went back out of work in January 2001. On 15 January 2001, plaintiff sought treatment of Dr. Richard Alioto, an orthopedic surgeon, who examined both of plaintiff's wrists and diagnosed her with tendonitis. Dr. Alioto provided plaintiff with a splint for her right wrist and assigned restrictions of no lifting more than 5 pounds and no repetitive type tasks. Dr Alioto testified in his deposition that when he first took a history from plaintiff, she described the sliding door injury of April 2000 as the beginning of her carpal tunnel symptoms. In March 2001, Dr. Alioto performed a Phalen's test on plaintiff's wrists which was normal. He did nerve conduction studies on plaintiff's left wrist which revealed mild carpal tunnel syndrome. On 27 April 2001, Dr. Alioto performed carpal tunnel release surgery on plaintiff's left wrist.
6. Based upon plaintiff's description of her job duties, Dr. Alioto opined that plaintiff's job with defendant could have been a contributing factor to plaintiff's contracting carpal tunnel syndrome. Dr. Alioto testified, however, that in April 2000, plaintiff had an injury to her right wrist, "where she developed what sounded to me like symptoms of carpal tunnel syndrome, with pain in the hand and radiating up the forearm and elbow." This time period coincides with the sliding glass door incident. Dr. Alioto also opined that plaintiff's job with defendant placed plaintiff at a greater risk of contracting carpal tunnel syndrome over the general public not so employed.
7. Ms. Wanda Dorman, a co-worker of plaintiff's, testified that while she agreed with plaintiff's description of the job, she did not hyperextend or hyperflex her wrist while performing the BTR Inspector job. She also stated that holding the parts involved did not take much grip pressure.
8. Ms. Teresa Sanders, another co-employee, testified that she has been an inspector for defendant for five to six years. She described the testing that is part of the job and stated that the tests take approximately one hour to complete. She also testified that there are a variety of other activities that inspectors perform other than testing.
9. On 9 January 2002, plaintiff was examined by Dr. George S. Edwards, an expert in hand and wrist disorders. Dr. Edwards examined both of plaintiff's hands and also diagnosed bilateral carpal tunnel syndrome. After reviewing a video tape of most of the job duties plaintiff performed, Dr. Edwards opined that there was no causal relationship between plaintiff's job duties and her bilateral carpal tunnel syndrome. While the tape depicts an employee demonstrating plaintiff's job in a slower fashion than might be performed by someone actually working as a BTR Inspector, the tape did give Dr. Edwards a reasonably accurate depiction of the primary duties involved in plaintiff's job; the type of gripping, finger and wrist flexion involved; and the repetition involved. The opinions of Dr. Edwards on causation and increased risk are given greater weight than those of Drs. Alioto and Whitney.
10. Based upon the greater weight of the evidence presented, plaintiff has failed to prove that she contracted bilateral carpal tunnel syndrome as a result of her job duties with defendant-employer.
 ***********
Based upon the foregoing Stipulations and Findings of Facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence that she has contracted the occupational disease of carpal tunnel syndrome due to causes and conditions which are characteristic of and peculiar to her occupation. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff is not entitled to compensation under the Act. N.C. Gen. Stat. § 97-52.
 ***********
Based upon the foregoing Stipulations, Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be and is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of September, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN